**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| READING HOSPITAL, on behalf of itself and all others similarly situated,<br>　　　　Plaintiff,<br><br>v.<br><br>HILL-ROM HOLDINGS, INC., et al.,<br>　　　　Defendants. | No.: 5:24-cv-02715-JMG<br><br>CLASS ACTION |

<u>**DEFENDANTS' BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**</u>

KRESSIN MEADOR POWERS LLC
Richard A. Powers, Esq. (*pro hac vice*)
Brandon C. Kressin, Esq. (*pro hac vice*)
Mark R. Meador, Esq. (*pro hac vice*)
Zachary C. Martin, Esq. (PA Bar No. 307223)
300 New Jersey Avenue NW, Suite 900
Washington, DC 20001
Telephone: (202) 464-2905
Fax: (202) 998-9319
Email: brandon@kressinmeador.com
Email: richard@kressinmeador.com
Email: mark@kressinmeador.com
Email: zach@kressinmeador.com

GIBSON, DUNN & CRUTCHER LLP
Elizabeth P. Papez, Esq. (*pro hac vice*)
Melanie L. Katsur, Esq. (PA Bar No. 88458)
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Email: EPapez@gibsondunn.com
Email: MKatsur@gibsondunn.com

Dated: November 8, 2024

*Counsel for Defendants Hill-Rom Holdings, Inc., Hill-Rom Company, Inc., and Hill-Rom Services, Inc.*

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...................................................................................................... 1

II.   STATEMENT OF FACTS AND RELEVANT ALLEGATIONS ............................ 2

    A.    IDNs are Entities that Own Multiple Hospitals ................................................ 2

    B.    Hospitals/IDNs Voluntarily Join Group Purchasing Organizations
        to Take Advantage of Their Purchasing Power ................................................ 3

    C.    Some Customers Purchase Hospital Beds Through Exclusive Agreements
        with IDNs that Result in Lower Prices ........................................................... 3

    D.    Plaintiff Complains of, but does not Identify, the "Challenged Agreements" ............. 4

    E.    Plaintiff is a Hospital that Filed its Original Complaint on June 20, 2024 ................. 5

III.  APPLICABLE LEGAL STANDARDS ................................................................... 6

    A.    Rule 12(b)(6) Standard .................................................................................... 6

    B.    Exclusive Dealing Arrangements Generally Pose Little Threat to Competition .......... 7

IV.   ARGUMENT .......................................................................................................... 7

    A.    Plaintiff Failed to Plead Anticompetitive Conduct by not Alleging that
        the Exclusive Agreements Substantially Foreclosed Competition .............................. 8

        i.    The Amended Complaint is Devoid of Factual Allegations Regarding
            Substantial Foreclosure ........................................................................ 10

        ii.   The Amended Complaint does not Allege that Hillrom's Conduct Bars
            a Substantial Number of Rivals from the Market or that Alternative
            Distribution Channels are Unavailable .................................................. 12

    B.    Plaintiff Failed to Establish Antitrust Standing ............................................. 14

        i.    Plaintiff has not Suffered Antitrust Injury ........................................... 14

        ii.   Plaintiff Failed to Allege Causation ..................................................... 15

        iii.  Plaintiff's Alleged Injury is Speculative and Remote ........................... 17

    C.    Plaintiff Failed to Plead the Existence of an Anticompetitive Agreement ................. 17

    D.    Plaintiff's Claims are Barred by the Statute of Limitations ........................................ 19

        i.    Plaintiff did not Assert its Claims Until a Decade After They Accrued .............. 20

        ii.   Tolling of the Statute of Limitations does not Apply ........................... 20

    E.    Plaintiff Failed to Comply with Local Civil Rule 23.1 .................................. 22

    F.    The Amended Complaint Should be Dismissed with Prejudice .............................. 23

V.    CONCLUSION ...................................................................................................... 23

## I.  <u>INTRODUCTION</u>

In this putative class action, Plaintiff Reading Hospital ("Plaintiff") asserts five antitrust claims against Defendants (collectively, "Hillrom") based on a single issue: Hillrom's sales of three types of hospital beds pursuant to alleged exclusive agreements called Corporate Enterprise Agreements ("CEAs"). The Amended Complaint refers to these agreements as the "challenged agreements," but Plaintiff provides almost no factual allegations about them beyond that: (1) they are exclusive agreements with entities called integrated delivery networks ("IDNs") that own two or more hospitals; and (2) Hillrom entered into two CEAs in 2014 ("2014 Agreements"). Nor does Plaintiff provide basic information about itself as required to state a claim for relief. For example, Plaintiff does not allege whether it is owned by or otherwise a part of an IDN, whether it made a purchase pursuant to a "challenged agreement," how any such agreement substantially and unlawfully foreclosed competition in any relevant market, how such agreement harmed Plaintiff, which product(s) it purchased from Hillrom, or when it made such purchase(s).

Plaintiff's failure to allege these basic facts expected of—and required by—a plaintiff basing its claims on an agreement in its possession warrants the Amended Complaint's dismissal on any one of the following four independent grounds:

1. **Failure to Allege Substantial Foreclosure**: An essential element of Plaintiff's claims is that Hillrom engaged in anticompetitive conduct by entering into exclusive dealing arrangements, which requires pleading that the arrangements resulted in substantial foreclosure of competition in a relevant market. The Amended Complaint is devoid of factual allegations sufficient to show substantial foreclosure of competition for the Relevant Products in any of the nationwide markets alleged. Accordingly, Plaintiff failed to allege the anticompetitive conduct its claims require.

2. **Failure to Allege Antitrust Standing**: Another essential element of Plaintiff's claims is antitrust standing. However, Plaintiff has not plausibly alleged how the "challenged agreements" have harmed Plaintiff in any way, let alone resulted in the type of injury the antitrust laws were meant to prevent. Further, Plaintiff's vague and conclusory references to higher prices are remote and speculative.

3. **Failure to Allege an Anticompetitive Agreement**: In exclusive dealing cases like this one, the plaintiff must allege an anticompetitive agreement. An antitrust complaint that alleges only "unspecified contracts with unnamed other entities to achieve unidentified anticompetitive effects does not meet the minimum" pleading standard. *Garshman v. Universal Res. Holding Inc.*, 824 F.2d 223, 230 (3d Cir. 1987). Because the Amended Complaint fails to plead such facts even as to Plaintiff's own contract and purchases, Plaintiff has not sufficiently alleged an anticompetitive agreement with anyone, much less all direct purchasers in the United States.

4. **Statute of Limitations**: Plaintiff's claims, which are subject to a four-year statute of limitations, are time-barred. The claims accrued in 2014, when Hillrom allegedly entered into the 2014 Agreements. Yet, Plaintiff did not file its Amended Complaint until a *decade* later. No exceptions apply, and none is even alleged.

Further, in contravention of Local Civil Rule 23.1, Plaintiff does not allege why it is "an adequate member of the class" or include "allegations thought to support the findings required by" Federal Rule of Civil Procedure 23(b)(3). For these reasons, as discussed in more detail below, Plaintiff's Amended Complaint should be dismissed in its entirety with prejudice.

## II.    STATEMENT OF FACTS AND RELEVANT ALLEGATIONS[1]

### A.    IDNs are Entities that Own Multiple Hospitals

IDNs are health systems that own two or more hospitals. ECF No. 26, ¶ 84. According to Plaintiff, there are at least 576 IDNs in the United States, and over 80% of U.S. hospitals are owned by an IDN. *Id.* at ¶¶ 86-87. The top ten largest IDNs—including Hospital Corporation of America ("HCA") and Providence Health ("Providence")—own 1,175 hospitals, which covers 20% of the hospital beds in the country. *Id.* at ¶ 90. HCA owns 188 hospitals,[2] and Providence owns 51

---

[1] Hillrom cites the Amended Complaint's allegations without conceding the veracity thereof.

[2] *See* HCA Healthcare, Inc., Quarterly Report (Form 10-Q) (June 30, 2024) at p. 8, *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/860730/000095017024087322/hca-20240630.htm. The Court may consider this public record filed with the Securities and Exchange Commission when considering this Motion. *See, e.g.*, *J/H Real Est. Inc. v. Abramson*, 901 F. Supp. 952, 955 (E.D. Pa. 1995) (considering SEC filings at motion to dismiss phase).

hospitals,[3] for a total of 239 hospitals. IDNs are one of the ways that medical equipment suppliers can sell their products to hospitals. *Id.* at ¶ 85.

### B.    Hospitals/IDNs Voluntarily Join Group Purchasing Organizations to Take Advantage of Their Purchasing Power

Group purchasing organizations ("GPO") are entities that negotiate purchasing contracts between hospitals/IDNs and medical equipment suppliers. *Id.* at ¶ 73. Hospitals and IDNs voluntarily join GPOs to take advantage of the agreements that GPOs negotiate with suppliers. *Id.* at ¶ 74. According to Plaintiff, a supplier that wants to sell its products to hospitals typically goes through a GPO to obtain access to IDNs and the hospitals they own. *Id.* at ¶ 76.

### C.    Some Customers Purchase Hospital Beds Through Exclusive Agreements with IDNs that Result in Lower Prices

There are three products at issue in the Amended Complaint: standard hospital beds, intensive care unit ("ICU") beds, and birthing beds (collectively, "Relevant Products"). *Id.* at ¶ 15. Hillrom is a supplier of hospital beds, and it sells one type of bed in each of the Relevant Product categories. *Id.* at ¶¶ 34, 50, 66. There are other companies that compete with Hillrom in the sale of the Relevant Products, including Stryker Corporation ("Stryker") and Linet Americas, Inc. ("Linet"). *Id.* at ¶¶ 36, 52, 68.

Plaintiff alleges that Hillrom has entered into CEAs with some IDNs—but not individual hospitals—that include the sale of the Relevant Products. *Id.* at ¶¶ 131, 157, 169. CEAs may be exclusive or nonexclusive agreements. *Id.* at ¶ 160. But Plaintiff does not allege—because it cannot—that Hillrom requires all hospitals to purchase beds pursuant to a CEA, or that Hillrom

---

[3] *See* Providence St. Joseph Health's Amicus Curiae Brief in Support of Petitioner at 1, *Dignity Health v. Minton*, 142 S. Ct. 455 (2021) (No. 19-1135), 2020 WL 1929113. The Court can take judicial notice of this publicly filed brief at the motion to dismiss phase. *See McGehean v. AF & L Ins. Co.*, 2009 WL 3172763, at *2 (E.D. Pa. Oct. 2, 2009) (noting that at the motion to dismiss phase, courts can "take judicial notice of . . . court-filed documents").

penalizes a hospital for choosing to purchase a bed directly from Hillrom outside of a CEA. Further, the Amended Complaint does *not* allege sufficient facts regarding the extent to which (1) Hillrom has entered into CEAs with IDNs other than HCA and Providence, (2) Hillrom's agreements with IDNs are CEAs that cover the Relevant Products, (3) CEAs include exclusivity provisions, and (4) if so, on what terms.

Plaintiff acknowledges that Hillrom customers receive "substantial rebates" on the purchase of, among other things, hospital beds in exchange for exclusivity. *Id.* at ¶ 138. In addition to significant cost savings, the Amended Complaint provides another procompetitive justification for why hospitals may choose to buy the Relevant Products from a single supplier: "the unique market dynamics of the Relevant Markets, including product standardization within a hospital." *Id.* at ¶ 160. In other words, according to the Amended Complaint, IDNs choose to buy Hillrom products due to the benefits of standardization. Against this admission, Plaintiff pleads no facts to support its conclusory allegation that Hillrom "needed to resort to" exclusive contracts to preserve an alleged monopoly, *id.* at ¶ 178, rather than to meet growing customer demand for agreements that provide the benefits of standardization.

### D.    Plaintiff Complains of, but does not Identify, the "Challenged Agreements"

Plaintiff takes issue with what it refers to as the "challenged agreements," which it says are exclusive CEAs that Hillrom entered into with IDNs. *Id.* at ¶¶ 155-60, 235. However, the Amended Complaint identifies only two exclusive agreements that Hillrom has entered into with IDNs (HCA and Providence), *i.e.*, the 2014 Agreements, both of which Hillrom publicly announced in 2014. *Id.* at ¶¶ 144-46.

Although the Amended Complaint vaguely references Hillrom's relationships with other IDNs, it does *not* allege any specific relationships that (1) are pursuant to CEAs, (2) are pursuant to exclusive arrangements, or (3) even cover purchases of one or more of the Relevant Products.

*See, e.g.*, *id.* at ¶ 152 (noting Hillrom's "committed contracts" without alleging they are exclusive or cover sales of the Relevant Products). Further, and critically, Plaintiff does not allege the terms of any agreement that *it* signed with Hillrom at any point, much less an agreement between Hillrom and an IDN that substantially foreclosed competition for Relevant Product purchases and directly caused Plaintiff to suffer antitrust injury as a result.

### E.    Plaintiff is a Hospital that Filed its Original Complaint on June 20, 2024

Plaintiff conclusorily alleges that it is a hospital that purchased hospital beds from Hillrom. *Id.* at ¶¶ 5, 15. However, the Amended Complaint provides *no* other information about Plaintiff or about any alleged hospital bed purchases. Notably, it *does not allege*:

- That Plaintiff is part of an IDN, and specifically, part of HCA or Providence. (In fact, Plaintiff is not part of HCA or Providence.[4])

- That Plaintiff purchased a hospital bed within the four-year time period before it filed its original Complaint (*i.e.*, from June 20, 2020 through the present).

- Which type(s) of hospital bed(s) Plaintiff purchased from Hillrom.

- That Plaintiff purchased a hospital bed from Hillrom pursuant to a "challenged agreement."

- That Plaintiff tried to purchase a hospital bed from a supplier other than Hillrom but was precluded from doing so by a CEA.

- That Hillrom sells the Relevant Products below cost.

*See generally id.*

On June 20, 2024, Plaintiff filed its original Complaint as a putative class action on behalf of all "direct purchasers of" Relevant Products from Hillrom "during a period beginning at least as early as June 20, 2020." *See* ECF No. 1. After Hillrom identified several pleading deficiencies,

---

[4] *See Tower Health v. CHS Cmty. Health Sys., Inc.*, 2022 WL 4080771, at *15 (E.D. Pa. Sept. 6, 2022) (identifying Plaintiff's IDN as Tower Health); *McGehean*, 2009 WL 3172763, at *2 (noting that at the motion to dismiss phase, courts can "take judicial notice of . . . court-filed documents").

Plaintiff filed its Amended Complaint on September 30, 2024. *See* ECF No. 26. In conclusory fashion, Plaintiff alleges that Hillrom's exclusive CEAs have resulted in higher prices for, and lower quality of, the Relevant Products. *See, e.g.*, *id.* at ¶¶ 190-96. The Amended Complaint *does not*: (1) explain how the CEAs have supposedly resulted in higher prices (let alone how such prices were caused by *substantial and unlawful* foreclosure of competition), (2) explain how much prices allegedly increased, (3) identify which of the Relevant Products are allegedly "lower quality," or (4) provide any factual allegations supporting the notion that Hillrom's beds are of lower quality. Plaintiff asserts five antitrust exclusive dealing claims: three Sherman Act Section 2 claims (15 U.S.C. § 2), a Sherman Act Section 1 claim (15 U.S.C. § 1), and a Clayton Act Section 3 claim (15 U.S.C. § 14). *See id.* at ¶¶ 204-48.[5] Hillrom files the instant Motion pursuant to Federal Rule of Civil Procedure 12(b)(6) seeking dismissal of the Amended Complaint with prejudice.

## III.   APPLICABLE LEGAL STANDARDS

### A.    Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion, "the factual allegations in the complaint 'must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even when doubtful in fact.'" *Host Int'l, Inc. v. MarketPlace, PHL, LLC*, 2020 WL 4704939, at *2 (E.D. Pa. Aug. 13, 2020) (Gallagher, J.) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court may disregard any "legal conclusions," and "'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,'" do not suffice. *Heredia-Caines v. Lehigh Valley Hosp., Inc.*, 2020 WL 5232880, at

---

[5] Though Plaintiff attempts to bolster the Amended Complaint by referencing litigation against Hillrom from 20 to 30 years ago that alleged bundled discounting, *see* ECF No. 26, ¶¶ 113-17, these allegations are irrelevant because Plaintiff does not assert claims challenging low prices that harmed competitors, *e.g.*, below-cost pricing or anticompetitive bundling. *See generally id.* Rather, Plaintiff seeks monetary damages for allegedly "paying more" for beds under only one theory—exclusive dealing—in each of its claims. *See id.* at ¶¶ 212, 221, 230, 239, 248.

*2 (E.D. Pa. Sept. 2, 2020) (Gallagher, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint "must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *H.G. Silverman Litig. Grp., P.C. v. TD Bank, N.A.*, 622 F. Supp. 3d 15, 17 (E.D. Pa. 2022) (Gallager, J.) (quoting *Iqbal*, 556 U.S. at 678).

### B.    Exclusive Dealing Arrangements Generally Pose Little Threat to Competition

As the Third Circuit has stated, "it is widely recognized that in many circumstances" exclusive dealing arrangements "may be highly efficient—to assure supply, price stability, outlets, investment, best efforts or the like—and pose no competitive threat at all." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 76 (3d Cir. 2010) (quoting *E. Food Servs., Inc. v. Pontifical Catholic Univ. Servs.*, 357 F.3d 1, 8 (1st Cir. 2004)). As a result, "exclusive dealing agreements have been frequently upheld when challenged on antitrust grounds." *Id.*; *see also id.* at 83 ("It is well established that competition among businesses to serve as an exclusive supplier should actually be encouraged."). "An exclusive dealing agreement is illegal . . . 'only if the "probable effect" of the arrangement is to substantially lessen competition'" in the relevant market. *Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394, 403 (3d Cir. 2016) (quoting *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 271 (3d Cir. 2012)). The "applicable law is the same for each of" Plaintiff's claims. *See id.* To sufficiently allege an exclusive dealing claim, Plaintiff "must show both that" Hillrom "engaged in anticompetitive conduct and that" Plaintiff "suffered antitrust injury as a result." *Id.*

### IV.    ARGUMENT

As noted above, Plaintiff claims to be a Hillrom customer with antitrust standing to sue (in both individual and representative capacities) on every claim in this case. But the Amended Complaint does not provide any information about Plaintiff's relationship with Hillrom. For example, the Amended Complaint does not allege whether Plaintiff had an agreement with

Hillrom, when the parties entered into such agreement, which product(s) Plaintiff purchased pursuant to such agreement, and when such purchases were made. Plaintiff undoubtedly possesses such information since *it* made the purchases and *it* (or its IDN) entered into the agreement. But the Amended Complaint omits this basic information even though every count purports to be based on "long-term, exclusive dealing agreements" or "exclusionary contracts with IDNs and Class members." ECF No. 26, ¶¶ 209, 218, 227, 233, 242.

The failure to plead these necessary and basic facts, as well as other fundamental deficiencies in Plaintiff's antitrust claims and theory of liability, provide five independent grounds upon which the Amended Complaint should be dismissed: (1) failure to plead anticompetitive conduct, (2) failure to establish antitrust standing, (3) failure to plead the existence of an anticompetitive agreement, (4) the statute of limitations, and (5) failure to comply with Local Civil Rule 23.1.

A.    **Plaintiff Failed to Plead Anticompetitive Conduct by not Alleging that the Exclusive Agreements Substantially Foreclosed Competition**

The Amended Complaint avers that Hillrom has engaged in one form of alleged anticompetitive conduct: exclusive agreements with IDNs. *See, e.g.*, ECF No. 26, ¶ 137. In analyzing an exclusive dealing claim under the law that governs all of Plaintiff's claims, the Court must, among other things, "consider whether a plaintiff has shown substantial foreclosure of the market for the relevant product." *Eisai, Inc.*, 821 F.3d at 403. The Third Circuit described how courts should analyze the substantial foreclosure element as follows:

> To demonstrate substantial foreclosure, a plaintiff must both define the relevant market and prove the degree of foreclosure. Although [t]he test is not total foreclosure, **the challenged practices must bar a substantial number of rivals or severely restrict the market's ambit**.

*Id.* at 403 (emphasis added) (internal quotations omitted). *Eisai* held that competitive restraints affecting "a few dozen hospitals out of almost 6,000 in the United States is not enough to demonstrate 'substantial foreclosure.'" *Id.* at 404 n.31 (3d Cir. 2016). Here, Plaintiff does not plead any *facts* that allege substantial foreclosure, or that establish any foreclosure at all. Instead, the Amended Complaint asserts that Hillrom used exclusive contracts to obtain monopoly power in the alleged relevant markets, and then purports to infer substantial foreclosure from vague allegations that Hillrom used unspecified exclusive contracts to "entrench" its alleged "monopoly" in the Relevant Products. *See, e.g.*, ECF No. 26, ¶¶ 3-4, 207.

This Court and other federal courts have dismissed complaints on Rule 12(b)(6) motions for failing adequately to allege substantial foreclosure. *See, e.g.*, *BRFHH Shreveport, LLC v. Willis-Knighton Med. Ctr.*, 49 F.4th 520, 530-32 (5th Cir. 2022) (affirming dismissal for failing to allege substantial foreclosure based on "conclusory" assertions of monopolization and market foreclosure that were more detailed than Plaintiff's allegations here); *Vazquez-Ramos v. Triple-S Salud, Inc.*, 55 F.4th 286, 301 (1st Cir. 2022) (same when "complaint does not allege facts plausibly pointing to any substantial degree of foreclosure of the alleged market"); *Crocs, Inc. v. Effervescent, Inc.*, 248 F. Supp. 3d 1040, 1058-59 (D. Colo. 2017); *Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1032 (N.D. Cal. 2015); *Larry Pitt & Assocs. v. Lundy L., LLP*, 57 F. Supp. 3d 445, 454 (E.D. Pa. 2014) (granting Rule 12(b)(6) motion when Court could not "reasonably infer that" contracts would "have a ruinous effect on rivals in the legal market, foreclosing competition in a substantial share of that market."); *PNY Techs., Inc. v. SanDisk Corp.*, 2014 WL 1677521, at *6 (N.D. Cal. Apr. 25, 2014) (appropriate to dismiss complaint when "allegations purporting to show . . . foreclosure are conclusory"). So too here.

   i. <u>The Amended Complaint is Devoid of Factual Allegations Regarding Substantial Foreclosure</u>

The Amended Complaint fails to allege any facts sufficient to establish the "degree of foreclosure" (much less substantial foreclosure) caused by the unidentified, allegedly exclusive CEAs. *See Eisai, Inc.*, 821 F.3d at 403. Plaintiff's conclusory assertions of market shares of installed base or annual sales do not cure this fatal pleading defect. In fact, the Amended Complaint does not include a single factual allegation about *how much of any alleged market has been foreclosed*. And Plaintiff pleads no other facts about (1) how many or the percentage of hospitals that are subject to an exclusive CEA, (2) how many or the percentage of IDNs that have an exclusive CEA with Hillrom, or (3) how many total purchases of any Relevant Product were made pursuant to an exclusive CEA.

Further, as discussed in more detail in Section IV.C below, Plaintiff pleaded nearly no factual information about the "challenged agreements" that it avers are anticompetitive. It is impossible to determine the "degree of foreclosure" for any Relevant Product without knowing more about the "challenged agreements," such as (a) with whom Hillrom entered into the agreements, (b) how many hospitals/beds such agreements cover, and (c) which product(s) the agreements cover. The District of Delaware dismissed an exclusive dealing claim under similar circumstances, stating:

> Since [Plaintiff] alleges no facts about the nature of the exclusive dealing arrangements and their potentially anticompetitive effects, the Court cannot assess, as part of the *prima facie* case, whether the arrangements could suppress competition or not. . . . Aside from allegations that all . . . Defendants engage in exclusive dealing, and that there are risks and costs associated with dealerships switching suppliers, [Plaintiff] has provided almost no factual basis upon which the court could consider the practical effects of the exclusive dealing arrangements.

*Int'l Constr. Prod. LLC v. Caterpillar Inc.*, 2016 WL 264909, at *6 (D. Del. Jan. 21, 2016).

Even the Amended Complaint's sparse allegations about the 2014 Agreements with HCA and Providence—the only two "challenged agreements" identified in the Amended Complaint—fail to allege how much of any market such agreements foreclosed. By Plaintiff's own admission, these two agreements could not foreclose more than 20% of any market. *See* ECF No. 26, ¶ 90 (stating that the top ten IDNs, which include HCA and Providence, own 1,175 hospitals and account for 20% of U.S. hospital beds). HCA and Providence are just two of at least 576 IDNs in the United States, *see id.* at ¶ 86, a mere 0.3% of all IDNs in the country. HCA and Providence operate 188 and 51 hospitals respectively, or a combined 3.9% of the hospitals in the United States.[6] That is far short of what would be required to allege substantial foreclosure.

Moreover, Plaintiff fails to allege any facts that Hillrom has used its "power to break the competitive mechanism and deprive customers of the ability to make a meaningful choice." *Eisai, Inc.*, 821 F.3d at 404. Plaintiff admits that it has a choice among hospital bed suppliers, *see* ECF No. 26, ¶¶ 36, 52, 68, but it fails to plead any facts showing that Hillrom's alleged exclusive agreements "rendered that choice meaningless." *Eisai, Inc.*, 821 F.3d at 404. The Amended Complaint contains only one sentence that could even be read as loosely referencing this standard. It is the threadbare and circular assertion that "the very fact that Hill-Rom as a monopolist needed to resort to long-term and exclusive CEAs is powerful evidence that Hill-Rom itself recognized that customers would otherwise prefer a competitor's products if given the choice." ECF No. 26, ¶ 178. This is precisely the type of "conclusory" allegation courts across the country have held insufficient to state a claim. *See, e.g.*, *BRFHH Shreveport*, 49 F.4th at 525 (5th Cir. 2022) (Plaintiff

---

[6] *See supra* notes 2-3; *Antidote Health Plan of Ariz., Inc. v. Becerra*, 2024 WL 4474917, at *4 (D.D.C. Oct. 11, 2024) (6,129 hospitals in the United States).

must support its contentions with "well-pleaded facts" and *cannot* rely on "conclusory allegations, unwarranted factual inferences, or legal conclusions.").

At most the Amended Complaint alleges Hillrom's market shares in the Relevant Products and that Hillrom entered into agreements that would provide price discounts on those products. But a complaint cannot survive a motion to dismiss by stating facts "merely consistent with" liability. *Twombly*, 550 U.S. at 557. To state "a plausible claim for relief," *Iqbal*, 556 U.S. at 679, Plaintiff must support its contentions with "*well-pleaded facts*" and *cannot* rely on "conclusory allegations, unwarranted factual inferences, or legal conclusions." *BRFHH Shreveport*, 49 F.4th at 530. Plaintiff's allegations of market shares and price discounts is not remotely enough for an exclusive dealing claim, especially when Plaintiff admits rivals—and especially those with a "similarly broad line of products"—could still compete for Relevant Product sales, *see* ECF No. 26, ¶¶ 36, 173, and does not include any allegations of foreclosure. These alleged facts are not even "consistent with liability," rather they are far more consistent with the *lawful* conditional exclusive contracts courts have upheld by defendants, including with market shares that were asserted to be as "high as" 70% and entrenched by "status quo bias." *See, e.g.*, *In re EpiPen*, 44 F.4th 959, 991-1000 (10th Cir. 2022) (upholding exclusive agreements under analysis applying *Tampa, Meritor, Eisai*, and *3M*).

   ii.   <u>The Amended Complaint does not Allege that Hillrom's Conduct Bars a Substantial Number of Rivals from the Market or that Alternative Distribution Channels are Unavailable</u>

The Amended Complaint also fails to allege that Hillrom's exclusive CEAs "bar a substantial number of rivals or severely restrict the market's ambit" for any of the Relevant Products. *Eisai, Inc.*, 821 F.3d at 403. In fact, the Amended Complaint admits that Hillrom has at least two "principal competitors" for the sale of each of the Relevant Products. ECF No. 26, ¶¶ 36, 52, 68. The Amended Complaint does not allege how Hillrom's exclusive CEAs have foreclosed

these suppliers from selling beds to Plaintiff or any other hospital, whether independent, part of an IDN, or a member of a GPO. *See Power Analytics Corp. v. Operation Tech., Inc.*, 2018 WL 10231437, at *20 (C.D. Cal. July 24, 2018), *aff'd*, 820 F. App'x 1005 (Fed. Cir. 2020) (dismissing complaint for failing to allege substantial foreclosure when complaint did "not plausibly allege why" defendant's "competitors do not 'represent a viable alternative'"). Nor does the Amended Complaint allege why a hospital cannot purchase hospital beds through other avenues of distribution, including direct purchases from a supplier or through a GPO. *See, e.g.*, *Larry Pitt & Assocs.*, 57 F. Supp. 3d at 454 (when analyzing exclusive dealing claims, courts can consider "alternative outlets for competitors").

Additionally, the Amended Complaint does not allege that a particular competitor has been foreclosed from selling a single Relevant Product due to Hillrom's CEAs. Likewise, the Amended Complaint does not provide any factual allegations that a potential competitor has failed to enter a market due to Hillrom's CEAs. Plaintiff merely asserts in conclusory fashion that the CEAs have "foreclosed would-be rivals from being able to discipline" Hillrom's "monopoly power and pricing." ECF No. 26, ¶ 4. Yet Plaintiff's bare-bones allegations do not identify a single "would-be rival" that did not enter a market due to Hillrom's CEAs. Nor does it provide any other detail as to such purported failed entry, much less plead any facts that show how Plaintiff was injured in any of its purchases by the foreclosure it (inadequately) alleges. For example, Plaintiff has not identified which types of beds it purchased or tried to purchase. This is particularly problematic because—even accepting Plaintiff's conclusory allegation as fact—if the "would-be rival" was a supplier of only birthing beds, such foreclosure would not harm competition in the sale of standard hospital beds or ICU beds. Nor does Plaintiff plead any facts showing that it was precluded from

purchasing a product from a Hillrom rival, much less that any such choices were the result of unlawful conduct rather than Hillrom winning supply agreements on the merits.

Because Plaintiff has failed to allege substantial foreclosure, it has not alleged anticompetitive conduct, warranting dismissal of the Amended Complaint. *See Larry Pitt & Assocs.*, 57 F. Supp. 3d at 454.

**B.    Plaintiff Failed to Establish Antitrust Standing**

The factors courts consider for determining whether a plaintiff has antitrust standing include:

> (1) the causal connection between the antitrust violation and the harm to the plaintiff and the intent by the defendant to cause that harm, with neither factor alone conferring standing; (2) whether the plaintiff's alleged injury is of the type for which the antitrust laws were intended to provide redress; [and] (3) the directness of the injury, which addresses the concerns that liberal application of standing principles might produce speculative claims.

*Host Int'l, Inc. v. MarketPlace, PHL, LLC*, 32 F.4th 242, 249 (3d Cir. 2022) (internal citations omitted). Even if Plaintiff sufficiently alleged anticompetitive conduct (it has not), its claims still fail because Plaintiff has not alleged facts sufficient to establish antitrust standing.

**i.    Plaintiff has not Suffered Antitrust Injury**

The Third Circuit often starts with "antitrust injury"—the second factor in the antitrust standing inquiry—explaining it as follows:

> [A]n injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendant's acts unlawful. Somewhat circular, but it means the challenged conduct affected the prices, quantity or quality of goods or services, not just the plaintiff's own welfare. All of which aims to protect competition, not competitors, consistent with the judicial gloss on the antitrust laws. And the injury required for antitrust standing must flow from the unlawful nature of defendants' acts.

*Host Int'l, Inc.*, 32 F.4th at 249-50 (internal citations, quotations, and brackets omitted). Courts "can and do dismiss complaints that fail to allege an antitrust injury." *SmithKline Beecham Corp. v. Apotex Corp.*, 383 F. Supp. 2d 686, 695 (E.D. Pa. 2004).

Here, without any supporting factual allegations, Plaintiff makes only conclusory allegations that Hillrom's "anticompetitive conduct results in supracompetitive prices to hospitals" and deprives hospitals access "to innovative and technologically superior products." *See* ECF No. 26, ¶¶ 190-96; *Host Int'l, Inc.*, 32 F.4th at 251 (failed to allege antitrust injury when complaint "lacks any facts alleging harm to other [] tenants and potential harms do not suffice"). However, Plaintiff's allegations belie its purported harm. The Amended Complaint is riddled with allegations that IDNs receive "exorbitant" or "substantial" rebates for entering into exclusive CEAs with Hillrom, *i.e.*, prices are lower. *See, e.g.*, ECF No. 26, ¶¶ 138, 140. Thus, by Plaintiff's own admission, hospitals owned by IDNs with an exclusive CEA receive a *lower* price for beds than they would if their IDN had not entered into an exclusive CEA. This is exactly what the antitrust laws are meant to protect. *See Phila. Taxi Ass'n, Inc v. Uber Techs., Inc.*, 886 F.3d 332, 340 (3d Cir. 2018) ("It is well established that lower prices, as long as they are not predatory, benefit consumers—'regardless of how those prices are set.'"). Because Plaintiff has failed to allege antitrust injury, the Amended Complaint should be dismissed. *City of Pitts. v. W. Penn Power Co.*, 147 F.3d 256, 269 (3d Cir. 1998) (affirming district court's grant of motion to dismiss for failing to allege antitrust injury).

ii.    <u>Plaintiff Failed to Allege Causation</u>

Plaintiff has also failed to plead a sufficiently causal connection between the alleged anticompetitive conduct—*i.e.*, the exclusive CEAs—and any harm to Plaintiff. Plaintiff does not provide a single factual allegation that *Plaintiff* paid higher prices or that *Plaintiff* purchased a

lower quality product. In an opinion involving a complaint equally devoid of such allegations, this

Court explained why dismissal of an exclusive dealing claim was warranted:

> [Plaintiff's] Sherman Act claims may not, moreover, survive a
> motion to dismiss simply by using the word "effect." This
> is especially so here because without more facts, the connection
> between [defendant's] interference with [plaintiff's] advertising—
> which was minimal in comparison to the universe of possible
> advertising options—and plaintiff's purported (and unspecified) lost
> profits is not a plausible inference. **[Plaintiff] provides *no*
> connective tissue between the purported cause of the harm and
> the harm it alleges has occurred.** [Plaintiff] offers no explanation
> as to how its inability to advertise at the marketing table or on one
> billboard led to *any* negative effect on its business *or* on the market.

*Warfield Phila., L.P. v. Nat'l Passenger R.R. Corp.*, 2009 WL 4043112, at *5 (E.D. Pa. Nov. 20,

2009) (bold emphasis added). The case is even more stark here. Plaintiff has offered no explanation

as to how the 2014 Agreements with HCA and Providence "led to *any* negative effect on"

Plaintiff's business (because it cannot since Plaintiff is not owned by either). *See id.*

Further, although Plaintiff alleges that it purchased beds from Hillrom, *see* ECF No. 26,

¶¶ 5, 15, it provides no information about these purchases at all, let alone enough information to

connect Plaintiff's alleged harm to the alleged antitrust violation:

- Plaintiff has not alleged the dates or terms of any of its purchases of the Relevant
  Products it purchased from Hillrom. For example, Plaintiff could not have been harmed
  by Hillrom's alleged conduct as to birthing beds if Plaintiff has not made any purchases
  of birthing beds from Hillrom.

- Plaintiff has not alleged that it purchased beds pursuant to one of the "challenged
  agreements" or even that it is owned by an IDN that has a "challenged agreement" with
  Hillrom. Because Plaintiff has not alleged that *all* bed sales were affected by the
  exclusive dealing arrangements, the failure to allege that it purchased a bed under a
  "challenged agreement" is fatal to adequately alleging causation.

- Plaintiff has not alleged a specific purchase affected by the exclusive CEAs that was
  more expensive than it otherwise would have been in the absence of the CEAs (let
  alone the amount of such purported price increase).

- Plaintiff has not alleged that it was unable to purchase beds from another supplier or
  that it was forced to buy beds from Hillrom as a result of the "challenged agreements."

iii.    Plaintiff's Alleged Injury is Speculative and Remote

Plaintiff's alleged injuries are speculative and far removed from the alleged antitrust violations. Plaintiff makes only conclusory allegations that Hillrom's alleged conduct results in "supracompetitive prices" and decreased the quality of Hillrom's products. *Id.* at ¶¶ 190-96. However, the Amended Complaint does not explain how the 2014 Agreements supposedly harmed Plaintiff, a third-party to such agreements, or why Plaintiff could not purchase beds from another supplier (*e.g.*, Linet or Stryker). Thus, Plaintiff's alleged harm is entirely speculative and remote.

**C.    Plaintiff Failed to Plead the Existence of an Anticompetitive Agreement**

As discussed above, Plaintiff's failure to provide any detail about the "challenged agreements" is fatal to establishing substantial foreclosure and antitrust injury. This failure also dooms Plaintiff's claims for another reason. When basing an antitrust claim on the existence of anticompetitive agreements, the "allegation of unspecified contracts with unnamed other entities to achieve unidentified anticompetitive effects" is not sufficient. *Garshman v. Universal Res. Holding Inc.*, 824 F.2d 223, 230 (3d Cir. 1987). To survive a motion to dismiss, a complaint alleging anticompetitive agreements must "answer 'basic questions' such as 'who, did what, to whom (or with whom), where, and when?'" *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 691 F. App'x 389, 390 (9th Cir. 2017) (quoting *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008)). Plaintiff's Amended Complaint falls far short of meeting this standard even though Plaintiff claims to be a direct purchaser of hospital beds from Hillrom.

As an initial matter, the Amended Complaint does not even allege that Plaintiff (or its IDN) had an agreement with Hillrom, let alone attach it or provide any information about such agreement. *See supra* Section II.F. Plaintiff's failure to plead a single fact about the allegedly unlawful contract provisions is not only fatal to its Amended Complaint, but it is also inexcusable after two attempted pleadings, and thus supports dismissal with prejudice. *See infra* Section IV.F.

Plaintiff admits that it copied most of its allegations from a lawsuit by competitor Linet. *See* ECF No. 26, ¶ 2. While its allegations suggest that a competitor may be unaware of the details of its competitors' contracts, customers have no excuse for failing to include the details of their own contracts. Plaintiff *is* such a customer and purports to be a representative of *all* direct purchasers harmed by the "challenged agreements" nationwide. *Id.* at ¶ 197.

Further, Plaintiff's allegations regarding the CEAs generally are insufficient and inconsistent. For example, Plaintiff alleges that the CEAs are "a single overarching agreement with a collective rebate." *Id.* at ¶ 139. But Plaintiff contradicts this allegation in the very next paragraph, claiming Hillrom "knew it could not simply include all of the anticompetitive terms in a single agreement." *Id.* at ¶ 140. There is no excuse for a plaintiff claiming to be party to an illegal agreement failing to allege any facts about that agreement.

In addition, Plaintiff pleads no facts supporting the existence of an exclusivity requirement contained within the CEAs. Plaintiff devotes just a single paragraph of its Amended Complaint to the substance of the CEAs, stating:

> The CEAs induce IDNs to confidential, long-term, exclusive dealing agreements covering the Relevant Products that force IDNs to purchase all of their requirements from Hill-Rom or, alternatively, agree to an ironclad commitment to purchase a very high percentage—often exceeding 80-90%—of their requirements from Hill-Rom, which operate as *de facto* exclusive dealing arrangements. As a practical matter, the effect on competition of an 80-90% commitment is tantamount to 100% because of the unique market dynamics of the Relevant Markets, including product standardization within a hospital.

*Id.* at ¶ 160. This is nothing more than a conclusory allegation that some CEAs contained exclusivity (or *de facto* exclusivity) requirements, which the Court need not accept as true. *See Heredia-Caines*, 2020 WL 5232880, at *2. Regardless, the Amended Complaint never explains how the exclusivity provisions work, which products they cover, or how they "secretly tie"

exclusivity rebates for different products together. Moreover, the claim that Hillrom's CEAs contain such bundled exclusivity provisions contradicts Plaintiff's earlier claim that Hillrom knew it could not include such provisions in a single agreement. *See* ECF No. 26, ¶ 158. Again, Plaintiff's own Amended Complaint says "customers" have these details, yet Plaintiff does not allege a single one with respect to its own purchases, much less the class it purports to represent.

Beyond the 2014 Agreements, Plaintiff does not even allege that Hillrom entered into exclusive arrangements with any IDNs. The Amended Complaint alleges that Hillrom became "a 'significant partner' with 'every major IDN in North America,'" and suggests that Hillrom entered into supply agreements with other IDNs. *Id.* at ¶ 151. But Plaintiff never alleges whether any of those agreements were exclusive. For example, Plaintiff alleges a Hillrom employee posted on LinkedIn about "committed contracts" in 2017 and 2019, but it does not allege that those agreements involved exclusivity. *Id.* at ¶ 152. Instead, at multiple points, Plaintiff alleges Hillrom "was careful to keep the details secret" and "carefully avoided any discussion of how these [IDN] deals were won." *Id.* at ¶¶ 146, 153. But Plaintiff and the putative class members here have the contracts.

In short, the Amended Complaint does exactly what the Third Circuit has explained is insufficient, alleging "unspecified contracts with unnamed other entities to achieve unidentified anticompetitive effects." *Garshman*, 824 F.2d at 230. Consequently, the lack of factual allegations about the "challenged agreements" is grounds alone to dismiss Plaintiff's claims.

### D.    Plaintiff's Claims are Barred by the Statute of Limitations

Plaintiff's claims are also time-barred. Plaintiff's claims are subject to a four-year statute of limitations. 15 U.S.C. § 15b. Antitrust claims accrue, and the statute of limitations began to run, when the defendant "commits an act that injures" the "plaintiff's business." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 188 (1997) (quoting *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S.

321, 338 (1971)); *see also Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 246 n.8 (3d Cir. 2001) ("Thus, antitrust claims are subject to the less plaintiff-friendly 'injury occurrence' accrual rule."). Courts can dismiss a complaint on a Rule 12(b)(6) motion when "the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *See Vinson v. Seven Seventeen HB Phila. Corp.*, 2001 WL 1774073, at *6 (E.D. Pa. Oct. 31, 2001) (quoting *Jaramillo v. Experian Info. Sols., Inc.*, 155 F. Supp. 2d 356, 358-59 (E.D. Pa. 2001)); *see also H.G. Silverman Litig.*, 622 F. Supp. 3d at 21 (granting Rule 12(b)(6) motion and dismissing claims based on checks deposited outside of the limitations period); *Heredia-Caines*, 2020 WL 5232880, at *4 (dismissing § 1981 allegations outside the limitations period on a Rule 12(b)(6) motion).

i.    <u>Plaintiff did not Assert its Claims Until a Decade After They Accrued</u>

The Amended Complaint alleges that Hillrom "began a systematic effort to exclude competition" on or about January 1, 2013. ECF No. 26, ¶ 1. The Amended Complaint then specifically mentions only the 2014 Agreements. *Id.* at ¶ 144. It is these exclusive agreements alone that Plaintiff claims is the anticompetitive conduct that caused it harm. In other words, Hillrom committed the "act that" allegedly "injure[d]" Plaintiff's business in 2014, at which time Plaintiff's claims accrued. *Klehr*, 521 U.S. at 188.

Despite its claims accruing in 2014, Plaintiff did not file its original Complaint until June 20, 2024—a *decade* after the 2014 Agreements were publicly announced and *six years* after the expiration of the applicable four-year statute of limitations. *See* 15 U.S.C. § 15b.

ii.    <u>Tolling of the Statute of Limitations does not Apply</u>

Because Plaintiff did not file its original Complaint within the four-year statute of limitations, Plaintiff's claims are untimely unless tolling applies. *See Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 607 (3d Cir. 2018). The Amended Complaint does not allege any facts

20

supporting tolling. Plaintiff does not even attempt to invoke the fraudulent concealment theory, for example; there is not a single factual allegation that Hillrom fraudulently concealed the exclusive CEAs. *See H.G. Silverman Litig. Grp.*, 622 F. Supp. 3d at 21 ("Court need not determine whether the statute of limitations . . . may be tolled for unintentional deception because Plaintiffs have not alleged any facts that would support a finding that Defendant had or failed to discharge a duty to disclose—much less fraudulently concealed—" deposits at issue.). Instead, the Amended Complaint acknowledges that Hillrom "publicly announced" these two agreements in 2014 and avers that they "sent tremors throughout" the industry. ECF No. 26, ¶¶ 145-46, 148.

Nor does Plaintiff attempt to assert a "continuing violations" theory. For this theory to apply, Plaintiff must allege that Hillrom took "an overt action" during the limitations period, and that such action injured Plaintiff. *See In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1173 (3d Cir. 1993). "The typical antitrust continuing violation occurs in a price-fixing conspiracy, actionable under § 1 of the Sherman Act, . . . when conspirators continue to meet to fine-tune their cartel agreement." *Midwestern Mach. Co. v. Nw. Airlines, Inc.*, 392 F.3d 265, 269 (8th Cir. 2004) (citing *Pa. Dental Ass'n v. Medical Serv. Ass'n of Pa.*, 815 F.2d 270, 278 (3d Cir. 1987)). In contrast, a plaintiff's payment of an allegedly "supracompetitive price" pursuant to an agreement executed outside the limitations period is not an "overt act." *See US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 69 (2d Cir. 2019) ("A contract is a vehicle for determining at the time of contracting what should happen at some time thereafter. So, like the Sixth, Eighth, and Ninth Circuits, we think of the performance of a contract as a manifestation of the 'overt act,' the decision to enter the contract, rather than an independent overt act of its own."); *Varner v. Peterson Farms*, 371 F.3d 1011, 1020 (8th Cir. 2004) ("Performance of the alleged anticompetitive contracts during the limitations period is not sufficient to restart the period.").

Here, Plaintiff has not alleged a single act that occurred within the limitations period—let alone one that has caused antitrust injury to Plaintiff. Plaintiff does not even allege that it made a bed purchase from Hillrom during the limitations period. *See supra* Section IV.B.ii. Even if Plaintiff alleged that it paid a supracompetitive price for beds as a result of the 2014 Agreements, such purchases would be "viewed as 'ripples' caused by the alleged initial injury," not as "independent" overt acts. *Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 600 (6th Cir. 2014). Because the Amended Complaint alleges neither an "overt act" during the limitations period nor that Plaintiff was harmed during it, the continuing violations theory does not apply. Consequently, Plaintiff's claims are time-barred.

### E.    Plaintiff Failed to Comply with Local Civil Rule 23.1

Local Civil Rule 23.1 states in relevant part:

> In any case sought to be maintained as a class action: . . . The complaint shall contain under a separate heading, styled "Class Action Allegations":
>
> (2) Appropriate allegations thought to justify such claim, including, but not necessarily limited to: . . . (B) the basis upon which the plaintiff . . . claims . . . to be an adequate representative of the class, . . . [and] (D) In actions claimed to be maintainable as class actions under Federal Rule of Civil Procedure 23(b)(3), allegations thought to support the findings required by that subdivision.

L. Civ. R. 23.1(b). Here, Plaintiff seeks to maintain a class action pursuant to Federal Rule of Civil Procedure 23(b)(2)-(3), but its "class action allegations" do not include allegations as to why it is "an adequate representative of the class." *See id.*; ECF No. 26, ¶¶ 197-203. Nor does the Amended Complaint include sufficient "allegations" to support the findings required by Federal Rule of Civil Procedure 23(b)(3) (predominance, typicality, adequacy, and commonality). Plaintiff's class allegations do not even allege common contract terms, much less that all class members were injured as a result of common exclusivity provisions. For these and other reasons, Plaintiff's class

allegations do not plead the basic facts required to state a claim of class-wide injury, or even the class-wide contract terms that allegedly caused the "supra-competitive prices attributable to" the conduct Plaintiff challenges. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021); *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) (reversing Third Circuit class certification). Thus, the Amended Complaint should be dismissed for failing to comply with Local Civil Rule 23.1. *See Mahr v. Project Mgmt. Inst. Inc.*, 2021 WL 322894, at *4 (E.D. Pa. Feb. 1, 2021) (dismissing class claims for failing to comply with Local Civil Rule 23.1).

     **F.**       **<u>The Amended Complaint Should be Dismissed with Prejudice</u>**

Courts will dismiss a claim with prejudice if allowing an amendment would be futile. *See Ellis v. Berks Cnty. Police Dep't*, 2021 WL 1837417, at *3 (E.D. Pa. May 7, 2021) (Gallagher, J.), *aff'd*, 2021 WL 3732989 (3d Cir. Aug. 24, 2021). "An amended complaint would be futile if it is barred by the statute of limitations." *Richardson v. Barbour*, 2020 WL 4815829, at *7 (E.D. Pa. Aug. 19, 2020) (Gallagher, J.). As discussed in Section IV.D above, Plaintiff's claims are barred by the statute of limitations, and thus, a second amended complaint would be futile. Further, counsel for the parties have discussed the arguments raised herein on three occasions, and Plaintiff has amended its complaint once already without being able to remedy the issues discussed above. Consequently, the Amended Complaint should be dismissed with prejudice.

**V.**      **<u>CONCLUSION</u>**

For the foregoing reasons, the Amended Complaint fails to state a claim upon which relief can be granted. The Amended Complaint's lack of factual allegations about the "challenged agreements" and Plaintiff's alleged purchases is fatal to establishing (1) substantial foreclosure, which is required to show anticompetitive conduct, (2) that Plaintiff sustained any injury, let alone antitrust injury, and that Plaintiff has antitrust standing, and (3) the existence of an anticompetitive agreement. Additionally, Plaintiff's claims are time-barred because they accrued in 2014 and

tolling does not apply. Lastly, Plaintiff failed to comply with Local Civil Rule 23.1. As a result, Hillrom respectfully requests that the Amended Complaint be dismissed with prejudice.

## CERTIFICATE OF COMPLIANCE

I certify that on September 6, 2024, September 13, 2024, and October 22, 2024, the parties' counsel met and conferred by video conference regarding the legal arguments for why the Defendants maintain that Plaintiff's claims should be dismissed. These legal arguments are set forth in this Brief that Defendants filed after Plaintiff's counsel informed Defendants' counsel that Plaintiff would not file a second amended complaint at this time.

Dated: November 8, 2024                           Respectfully submitted,

                                              _____s/ Zachary C. Martin_____

GIBSON, DUNN & CRUTCHER LLP          KRESSIN MEADOR POWERS LLC
Elizabeth P. Papez, Esq. (*pro hac vice*)     Brandon C. Kressin, Esq. (*pro hac vice*)
Melanie L. Katsur, Esq. (PA Bar No. 88458)    Richard A. Powers, Esq. (*pro hac vice*)
1050 Connecticut Avenue, N.W.                 Mark R. Meador, Esq. (*pro hac vice*)
Washington, DC 20036-5306                     Zachary C. Martin, Esq. (PA Bar No. 307223)
Email: EPapez@gibsondunn.com                  300 New Jersey Avenue NW, Suite 900
Email: MKatsur@gibsondunn.com                 Washington, DC 20001
                                              Telephone: (202) 464-2905
                                              Fax: (202) 998-9319
                                              Email: brandon@kressinmeador.com
                                              Email: richard@kressinmeador.com
                                              Email: mark@kressinmeador.com
                                              Email: zach@kressinmeador.com

                                              *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I, Zachary C. Martin, hereby certify that a true and correct copy of the foregoing was filed electronically and was made available for viewing and downloading via the Court's CM/ECF system, and all counsel of record was served via the court's CM/ECF system notification.

Dated: November 8, 2024                    _____s/ Zachary C. Martin_____
                                           Zachary C. Martin, Esq. (PA Bar No. 307223)